INDUSTRY CITY ASSOCIATES, Plaintiff,

v.

LOCAL 917 OF the INTERNATIONAL BROTHERHOOD OF TEAMSTERS, CHAUFFEURS, WAREHOUSEMEN AND HELPERS OF AMERICA, Defendant.

No. 90 C 436.

United States District Court, E.D. New York.

March 7, 1990.

Jackson, Lewis, Schnitzler & Krupman, New York City (Matthew B. Halpern, Steven S. Goodman, of counsel), for plaintiff.

Miller & Bush, New York City (Irving T. Bush, of counsel), for defendant.

## MEMORANDUM AND ORDER

NICKERSON, District Judge:

Following the entry of a temporary restraining order by this court, and an evidentiary hearing, plaintiff Industry City Associates ("Industry City") seeks a preliminary injunction against defendant union ("Local 917") under § 301(a) of the Labor Management Relations Act, 29 U.S.C. § 185(a), to prohibit strikes or work stoppages at its warehouse facilities in Bush Terminal, Brooklyn, New York.

Industry City leases warehouse space to a number of tenants, and employs utility men and elevator operators in these buildings who are represented by Local 917. In August of 1987 Industry City sold four of its approximately twenty-six buildings to Bush Realty Associates (Bush Realty), an independent company. Industry City does not dispute it never formally notified Local 917 of the sale of this part of its business. Nor does it contend that Bush Realty in any manner assumed the obligations of the collective bargaining agreement between Industry City and Local 917.

Under an arrangement by which Industry City continued to provide utility and building services to Bush Realty, the nine Industry City elevator operators employed in the Bush Realty buildings continued to work in the three buildings where they had worked before the sale. In May of 1988, Bush Realty notified Industry City it wished to employ its own elevator operators, and Industry City told the elevator operators they would be reassigned to other work. Around this time Local 917 appears to have become aware of the sale, and threatened a strike. As a result, Bush Realty agreed to continue using the nine Industry City elevator operators.

As a result of a dispute with Industry City over bills for utility services, Bush Realty again refused to use Industry City

elevator operators in January of 1990. Local 917 picketed Industry City several times in early February. In negotiations directed by Judge Sifton on February 6, 1990, Industry City offered to continue to employ the nine elevator operators and not lay them off immediately; Local 917 demanded that Industry City give it advance notice of any future transfer of any of its buildings and require the transferee to assume the collective bargaining agreement between Industry City and Local 917. Negotiations having reached an impasse, Industry City wishes to submit the dispute to arbitration, and Local 917 wishes to strike.

The collective bargaining agreement in this case (hereinafter "the agreement") consists of an agreement entered into July 14, 1984 that expired on July 13, 1987; a letter extending that agreement one year; and an arbitrator's award, based on a stipulation extending the original agreement to July 13, 1992, that modified and added terms.

Article 21 of the agreement provides for arbitration

[s]hould any dispute or grievance arise between the Company and the Union as to the interpretation or application of any provision of this Agreement, or should any local trouble of any kind arise between the Company and the Union.

The agreement also contains a broad management rights clause, which vests exclusively in Industry City the right to "assign, ... transfer and lay off employees for lack of work or other legitimate reasons". There is also a no-strike provision stating that "there will be no strikes, sympathetic strikes, lockouts or stoppages of work of Employees covered by this Agreement during its life."

Industry City urges that an injunction is appropriate here under *Boys Markets, Inc. v. Retail Clerks*, 398 U.S. 235, 90 S.Ct. 1583, 26 L.Ed.2d 199 (1970), to enforce Local 917's obligation to arbitrate its grievances under the collective bargaining agreement. In that decision, the Supreme Court carved out a narrow exception to the broad anti-injunction provisions of the Norris–LaGuardia Act, 29 U.S.C. § 101 *et seq.*, by authorizing federal courts to enjoin a strike if the employer establishes that the dispute giving rise to the strike is subject to mandatory arbitration under an agreement which contains an explicit or implicit no-strike provision, and that the issuance of an injunction is warranted under ordinary principles of equity. *Id.* at 255, 90 S.Ct. at 1595.

■ Industry City contends that the dispute was committed to arbitration under the agreement on several different theories. The first is that the dispute concerns the transfer of the nine elevator operators to other assignments, an action Industry City says it is authorized to take under the management rights clause of the agreement. Alternatively, Industry City argues that the dispute is about whether the transfers were for a "legitimate reason" under the management rights clause, an arbitrable matter of contract interpretation.

The court rejects these descriptions of the dispute. The underlying dispute is "the event or condition that triggers the work stoppage." *Jacksonville Bulk Terminals, Inc. v. International Longshoremen's Association*, 457 U.S. 702, 711, 102 S.Ct. 2672, 2679, 73 L.Ed.2d 327 (1982). Local 917 describes that dispute as a failure to negotiate a satisfactory agreement as to the effects on employee job security of a sale of part or all of Industry City's business, and Industry City concedes no such agreement has ever been reached in any prior contract negotiation.

The effects of partial closings or sales is a subject of mandatory bargaining under §§ 8(d) and 8(a)(5) of the National Labor Relations Act (NLRA). *First National Maintenance Corp. v. NLRB*, 452 U.S. 666, 682, 101 S.Ct. 2573, 2582, 69 L.Ed.2d 318 (1981). When this issue is not covered by an unexpired collective bargaining agreement, the parties are entitled to bargain to an impasse and resort to the economic weapons at their disposal. *Id.* at 676, 101 S.Ct. at 2579 *citing NLRB v. American National Insurance Co.*, 343 U.S. 395, 72 S.Ct. 824, 96 L.Ed. 1027 (1952).

A request for a modification of an unexpired contract is also covered in § 8(d) of the NLRA, which among other things provides that a party desiring modification must continue "in full force and effect, without resorting to strike or lock-out, all the terms and conditions of the existing contract" pending the contract expiry date or end of the statutory notice period, whichever is later. 29 U.S.C. § 158(d)(4). If Local 917's strike falls afoul of this provision, it may constitute an unfair labor practice under § 8(b)(3) of the NLRA, 29 U.S.C. § 158(b)(3). Yet while this court may enjoin an illegal strike on the application of the National Labor Relations Board under § 10(j), 29 U.S.C. § 160(j), it may not ignore the limitations of the Norris–LaGuardia Act and enjoin a strike over a non-arbitrable dispute on the application of a private employer. *See Elsinore Shore Associates v. Local 54*, 820 F.2d 62, 69 (3d Cir.1987).

Industry City further argues that the present agreement covers the effects on employees of a sale of the business, through its various provisions for notice prior to layoffs, seniority and job assignments. These provisions were fashioned to apply to all employees. They do not address themselves to the effects on those displaced by a partial sale of the business. The court does not construe the underlying dispute to be about the interpretation or application of the agreement.

Industry City also urges that the dispute involves "local trouble" under the arbitration clause. The word "local" generally means pertaining to a particular place or part, *see The Random House Dictionary of the English Language* 840 (1969), and courts have generally construed "local trouble" as referring to particular disputes at particular job sites, *see, e.g. Gateway Coal Co. v. United Mine Workers of America*, 414 U.S. 368, 377, 94 S.Ct. 629, 636, 38 L.Ed.2d 583 (1974). The union's demand is for a successors and assigns guarantee and notice of any further sale of Industry City property. This demand speaks not only to the present effects on certain employees of a sale of a particular set of the employer's buildings,

but to future possible effects and future sales. To construe "local" to cover any conceivable dispute between Industry City and Local 917 would render the word meaningless.

Industry City also argues that the dispute concerns the issue of whether Local 917 pickets violate the no-strike provision of the agreement. If there is such a dispute Industry City may seek arbitration of it. The court is not empowered to enjoin the union pending arbitration on this ground alone. *Buffalo Forge v. United Steelworkers of America*, 428 U.S. 397, 412, 96 S.Ct. 3141, 3150, 49 L.Ed.2d 1022 (1976). Even without recourse to an injunction pending arbitration, Industry City does not lack legal remedies for an unlawful strike. Among them are specific enforcement of an arbitrator's decision, damages, and a request to the National Labor Relations Board to institute unfair labor practice proceedings and to seek injunction of any unfair labor practice found. *See Elsinore Shore Associates v. Local 54*, 820 F.2d 62, 69 (3d Cir.1987).

Plaintiff's application for a preliminary injunction is denied.

So ordered.